Filed 5/11/22  In re Eddy G. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re EDDY G. et al., Persons Coming Under the Juvenile Court Law. | B314641 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BLANCA G. et al.,<br><br>Defendants and Appellants. | (Los Angeles County Super. Ct. No. 18CCJP03048A-B) |

APPEAL from orders of the Superior Court of Los Angeles County, Mary E. Kelly, Judge.  Affirmed.

Shaylah Padgett-Weibel, under appointment by the Court of Appeal, for Defendant and Appellant Blanca G.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant Armando G.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel for Plaintiff and Respondent.

## INTRODUCTION

Blanca G. and Armando G., the parents of Eddy G. and Valentina G., challenge visitation orders the juvenile court issued under Welfare and Institutions Code section 362.4, subdivision (a), when the court terminated jurisdiction.[1] Armando argues the court abused its discretion in requiring monitored visitation with his children; Blanca argues the court abused its discretion in prohibiting her from serving as the monitor for Armando's visits. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     *Armando Sexually Abuses Valentina and Hits Eddy with a Belt*

On May 3, 2018, when Valentina was four years old, she told Blanca she no longer wanted to be alone with Armando "because he touches her vagina and buttocks area with his fingers." Valentina begged Blanca not to drop her off at Armando's workplace because she was afraid. When Blanca saw Valentina's eyes "began to get watery as if she was scared of" Armando, Blanca took her to the doctor. After examining

---

[1]     Statutory references are to the Welfare and Institutions Code.

2

Valentina, the doctor contacted the Los Angeles County Department of Children and Family Services. The Department conducted an initial investigation and concluded Valentina "was very detailed" when she identified the areas of her genitalia Armando touched. Valentina told a nurse who examined her that Armando placed his hand inside her underwear, that "it hurt" when Armando touched her, and that her body felt "bad." Valentina repeated her account of the abuse in a separate interview with a police officer the same day.

Valentina's 11-year-old brother, Eddy, told a social worker that Armando recently hit him with a belt "a few times," leaving a four-inch purple bruise, after Eddy failed to clean up a mess. Eddy estimated that Armando disciplined him by hitting him with a belt on approximately 50 different occasions and stated that Blanca told him not to tell anyone about his bruise "or else they will call the cops." The Department filed a petition under section 300, subdivisions (a), (b), (d), and (j), alleging that Armando sexually abused Valentina and physically abused Eddy and that Blanca failed to protect the children from Armando's abuse. The Department alleged that Armando struck Eddy multiple times with a belt and that, while Armando was alone with Valentina on two occasions, he fondled her vagina and buttocks. The court detained the children from Armando, released them to Blanca, and ordered monitored visitation for Armando.

B. *The Court Asserts Jurisdiction, Removes the Children from Armando, Places Them with Blanca, and Orders Monitored Visitation for Armando*

After the detention hearing, Eddy recanted his statement Armando hit him with a belt, explaining Armando slapped him with his hand "'enough times to make it hurt like with a belt.'"

3

Blanca denied that Valentina told her Armando had sexually abused her, stated that she did not believe Armando "did this," and denied that Armando ever hit Eddy. Armando denied that he sexually abused Valentina or that he hit Eddy with a belt. On August 1, 2018 the court sustained the following counts, as amended: under section 300, subdivision (b), that Armando inappropriately disciplined Eddy and that Blanca failed to protect Eddy; under section 300, subdivisions (b) and (d), that Armando sexually abused Valentina; and under section 300, subdivision (j), that Armando placed Eddy and Valentina at risk of harm based on his conduct toward the other sibling.[2] The juvenile court declared Eddy and Valentina dependent children of the court, removed them from Armando, and placed them with Blanca under the supervision of the Department.

The court ordered Armando to participate in sexual abuse and individual counseling and granted him monitored visitation; the court ordered Blanca to complete parenting classes and awareness of sexual abuse counseling and prohibited her from monitoring Armando's visits.[3]

---

[2] The court found Blanca's failure to protect Eddy from Armando's inappropriate discipline endangered Valentina under section 300, subdivision (j); the court did not sustain the allegation Blanca's failure to protect Valentina from Armando's sexual abuse endangered Eddy.

[3] Armando appealed from the jurisdiction findings and disposition orders. Appellate counsel for Armando filed a brief under *In re Phoenix H.* (2009) 47 Cal.4th 835 and advised Armando that he could submit any contentions he wanted this court to consider. Armando did not submit any such contentions, and on December 17, 2018 we dismissed his appeal.

4

C. *After Three Years of Supervision, the Court Terminates Jurisdiction, Grants Blanca Sole Legal and Physical Custody, and Orders Armando's Visitation To Remain Monitored*

Over the course of almost three years, the juvenile court held six review hearings under section 364.[4]  For the first three hearings, the Department reported that, while Valentina continued to tell her therapist the sexual abuse occurred, Armando continued to deny it occurred.  At each of these hearings, the court found continued jurisdiction was necessary because conditions justifying jurisdiction still existed.  The court acknowledged that Blanca and Armando were making progress in their respective programs, but observed that Armando was still "in denial about what occurred" (first review hearing), "continue[d] to not take acceptance for what happened" (second review hearing), and refused "to accept responsibility for what the court found true" (third review hearing).

At the fourth, pandemic-delayed review hearing on February 17, 2021 the juvenile court denied the Department's request to terminate jurisdiction and grant Blanca sole legal and physical custody with monitored visitation for Armando.  The court stated that, because Blanca and the children wanted Armando to move back into the home, granting the Department's request would "set the family up for this whole thing to happen

---

[4]      "Section 364 governs review hearings for dependent children who have not been removed from one or both parents. [Citations.]  'When proceeding under section 364, because the child is in placement with a parent, the court is not concerned with reunification, but with determining whether continued supervision is necessary in the family home.'" (*In re R.F.* (2021) 71 Cal.App.5th 459, 469; see § 364, subd. (c).)

5

all over again." The court instead ordered the Department to identify any additional services Armando should receive. The court also ordered Blanca and Armando to participate in a child and family team meeting (CFT) to formulate a safety plan with the Department.[5]

At the CFT meeting on March 15, 2021 the social workers shared with Blanca and Armando the Department's concern that Armando continued to deny the abuse occurred. Blanca responded that, although she believed Valentina, she was "not sure 'it' happened." Blanca explained that "there were many different versions of what Valentina initially reported," that "there was never a full investigation," and that the physician "wasn't sure what happened either." Armando continued to deny that he ever abused Valentina and asserted that "this all happened when Valentina was a baby and she was just giving the doctors the answers they wanted." Armando claimed that the Department and the courts were "corrupt" and that they tried to make him look like an abuser, which he denied. The Department subsequently reported that "a safety plan was unable to be drawn up, given the [parents'] recent statements during the CFT [meeting] and ongoing denial of the abuse."

At the fifth review hearing on May 17, 2021 the juvenile court decided it would allow Blanca to monitor Armando's visits with Valentina for a three-month trial period. The court stated it was making this decision because Armando had completed all of

---

[5] "'Child and family team' means a group of individuals who are convened by the placing agency and who are engaged through a variety of team-based processes to identify the strengths and needs of the child or youth and their family, and to help achieve positive outcomes for safety, permanency, and well-being." (§ 16501, subd. (a)(4).)

6

his programs, Blanca said she could protect the children, and Eddy was "very bonded to his father." The court gave the Department the authority to make unannounced visits in the home.

At the final review hearing on August 16, 2021, the court terminated jurisdiction, granted Blanca sole legal and physical custody of the children, and ordered Armando's visitation to remain monitored. The court stated: "The court is very concerned about the fact that [Armando] continues to deny what occurred because, as we know, one who continues to—one cannot fix a problem one does not acknowledge one has. . . . This does serious, serious harm to a child, and were this to reoccur again, it would be devastating. And because [Armando] does not acknowledge [the abuse], even though he has completed all of his programs, the court does not believe it's appropriate to grant the unmonitored visits for [Armando] or to allow [him] to return to the home." The court cited its prior credibility findings that Armando's denial he hit Eddy was "not true" and that Valentina, who "was very clear about what happened to her" and "expressed fears staying home with [Armando] when [Blanca] goes to school," was credible.

The Department asked the juvenile court not to allow Blanca to monitor Armando's visits because, as recently as March 2021, Blanca disputed the allegations the court had sustained, and therefore would not be able to protect the children should Armando return to the home. The court agreed and stated that, because Blanca "is recanting the statements that were made by" Valentina, and because Blanca told Eddy not to tell anyone about Armando hitting him, "in retrospect" the court's decision to allow Blanca to monitor Armando's visits "was probably inappropriate." The court explained "those monitored visits went okay with [Blanca] monitoring them" because the

7

court had been supervising the case. The court expressed concern about what would happen if, without court supervision, Blanca had to go to the store and needed to leave the children alone with Armando. The court issued a custody and visitation order reflecting these rulings. Blanca and Armando each timely appealed.

## DISCUSSION

Armando and Blanca challenge the juvenile court's visitation orders on different grounds: Armando argues the court abused its discretion in requiring his visitation to remain monitored; Blanca argues the court abused its discretion in prohibiting her from monitoring Armando's visits. Neither order was an abuse of discretion.

A. *Applicable Law and Standard of Review*

"[S]ection 362.4 authorizes the juvenile court, when terminating jurisdiction over a dependent child, to issue a custody and visitation order that will become part of the parents' family law file and remain in effect in the family law action 'until modified or terminated by a subsequent order.' Section 302, subdivision (d), reinforces the posttermination significance of the juvenile court's section 362.4 custody orders by providing that those orders (commonly referred to as 'exit orders') may not be modified by the family court 'unless the court finds that there has been a significant change of circumstances since the juvenile court issued the order and modification of the order is in the best interests of the child.'" (*In re Anna T.* (2020) 55 Cal.App.5th 870, 871-872, fn. omitted; see § 362.4, subds. (a), (b); *In re Chantal S.* (1996) 13 Cal.4th 196, 202-203; *In re T.S.* (2020) 52 Cal.App.5th 503, 513.)

"When making a custody determination under section 362.4, 'the court's focus and primary consideration must always be the best interests of the child.'" (*In re T.S.*, *supra*, 52 Cal.App.5th at p. 513; see *In re J.P.* (2019) 37 Cal.App.5th 1111, 1119 ["'The best interest of the child is the fundamental goal of the juvenile dependency system.'"]; *In re John W.* (1996) 41 Cal.App.4th 961, 973 ["in making exit orders, the juvenile court must look at the best interests of the child"].) "When the juvenile court makes custody or visitation orders as it terminates dependency jurisdiction, it does so as a court with 'a special responsibility to the child as *parens patriae*[6] and [the court] must look to the totality of a child's circumstances when making decisions regarding the child.'" (*In re J.T.* (2014) 228 Cal.App.4th 953, 963; see *In re J.P.*, at p. 1119.)

"We review a juvenile court's decision to terminate jurisdiction and to issue an accompanying exit custody order for abuse of discretion, and may not disturb such rulings unless the court made an ""'arbitrary, capricious, or patently absurd determination.'""" (*In re C.W.* (2019) 33 Cal.App.5th 835, 863; see *In re J.P.*, *supra*, 37 Cal.App.5th at p. 1119 ["Visitation orders in dependency cases are typically reviewed for abuse of discretion and will not be reversed absent a 'clear showing of an abuse of discretion.'"]; *In re M.R.* (2017) 7 Cal.App.5th 886, 902 [same].) "'When applying the deferential abuse of discretion standard, "the trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its

---

6 Parens patriae is "the state's interest 'in providing care to its citizens who are unable . . . to care for themselves.'" (*In re Qawi* (2004) 32 Cal.4th 1, 15; see *In re Sade C.* (1996) 13 Cal.4th 952, 989 ["[t]he state has a '*parens patriae* interest in preserving and promoting the welfare of the child'"].)

application of the law to the facts is reversible only if arbitrary and capricious.'"'" (*In re Maya L.* (2014) 232 Cal.App.4th 81, 102.) "In reviewing an order for abuse of discretion, we '"must consider all the evidence, draw all reasonable inferences, and resolve all evidentiary conflicts, in a light most favorable to the trial court's ruling.  [Citation.]  The precise test is whether any rational trier of fact could conclude that the trial court order advanced the best interests of the child."'" (*In re Natalie A.* (2015) 243 Cal.App.4th 178, 186-187.)

B.   *The Juvenile Court Did Not Abuse Its Discretion in Requiring Monitored Visitation for Armando*

The court's order requiring Armando's visitation to remain monitored was in the best interests of Eddy and Valentina: keeping them safe from the risk of Armando committing further acts of sexual or physical abuse.  Throughout the three years of the dependency proceedings, Armando refused to acknowledge the allegations the court sustained in the petition.  In fact, Armando vehemently denied he ever sexually abused Valentina or hit Eddy with a belt.  The juvenile court acted well within its discretion in concluding Armando's failure to take responsibility for his wrongful conduct posed a substantial risk that such conduct would recur.  "[D]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision.  This most commonly is significant in cases where a person having been adjudicated to have perpetrated sexual or physical abuse on a minor in his custody, vigorously denies the abuse and, because of this denial, is likely to be resistant to therapy or treatment necessary to effect behavioral changes to insure the minor will not be [at] risk if placed in his custody." (*In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1044; accord, *In re A.F.* (2016)

10

3 Cal.App.5th 283 293; see *In re Gabriel K.* (2012) 203 CalApp.4th 188, 197 ["One cannot correct a problem one fails to acknowledge."].)

In light of this very real risk, the court properly required a monitor for Armando's visits to ensure the children's safety. (See § 362.1, subd. (a)(1)(B) ["No visitation order shall jeopardize the safety of the child."]; *In re T.M.* (2016) 4 Cal.App.5th 1214, 1220 ["'the parents' interest in the care, custody and companionship of their children is not to be maintained at the child's expense'"].) Particularly given the juvenile court's finding that a recurrence of the sexual abuse would be devastating to Valentina, the court reasonably ruled on the side of caution. (See *In re I.J.* (2013) 56 Cal.4th 766, 778 ["'in order to determine whether a risk is substantial, the court must consider both the likelihood that harm will occur and the magnitude of potential harm'"].) And because Blanca told Eddy to conceal evidence Armando used excessive physical punishment to discipline him (and Eddy obediently recanted), the court reasonably required extra vigilance to keep Eddy safe. (See *In re J.T.*, *supra*, 228 Cal.App.4th at p. 963.)

Citing a January 7, 2019 letter from a psychologist, Armando argues that "it was in the best interests of the children to have unmonitored contact" because he "successfully completed services" and that "it cannot be said that he did not benefit or that his children remained at risk." Armando's argument essentially asks us to reweigh the evidence and make credibility findings, which we cannot do. (See *In re I.J.*, *supra*, 56 Cal.4th at p. 773 ["'"issues of fact and credibility are the province of the trial court"'"]; *In re Eli B.* (2022) 73 Cal.App.5th 1061, 1072 ["In reviewing the juvenile court's ruling we cannot reweigh the evidence or evaluate witness credibility."]; *In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1452 [under the substantial evidence

11

standard of review, we "'must accept the evidence most favorable to the order as true and discard the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact'"].)

Moreover, the record does not support Armando's assertion "every therapist concluded that [he] did not present a danger to his children." The statement by Armando's sexual abuse counseling psychologist, that Armando "does not appear to represent a danger to his children," was hardly reassuring. Moreover, the psychologist made this statement about the apparent lack of danger two and a half years before the juvenile court's exit orders.[7] The report from Armando's individual counseling therapist did not address whether Armando was a danger to his children (although the therapist did confirm Armando's continued "adamant" denial of the sexual abuse allegations). Like the report from the psychologist, the therapist's report summarized Armando's progress more than two and a half years before the custody and visitation orders. In the intervening time period, Valentina repeated to her therapist and to Blanca that Armando had sexually abused her, and as discussed, Armando continued to deny the allegations, even when social workers told him at the CFT meeting in March 2021 they were concerned about his continued denial. Thus, although Armando completed his court-ordered programs, he still had not taken the crucial step of acknowledging any wrongdoing. (See *In re Gabriel K.*, *supra*, 203 Cal.App.4th at p. 197; see also *In re Maya L.*, *supra*, 232 Cal.App.4th at p. 104 [joint custody would not be in the child's best interest in part because of the mother's "ongoing refusal to accept responsibility for any wrongdoing"].)

---

[7] The psychologist wrote another report on January 25, 2019, essentially repeating the statement in the January 7, 2019 letter.

12

Citing *Blanca P. v. Superior Court* (1996) 45 Cal.App.4th 1738 (*Blanca P.*), Armando argues the juvenile court's visitation order is "capricious" because it punishes him "not for his actions, but for his beliefs—for failing to bend the knee." *Blanca P.*, however, is readily distinguishable. In *Blanca P.* an unusual sequence of procedural events resulted in the juvenile court making a finding of detriment at the 18-month review based on a prior finding by a different judge that the father sexually abused his three-year-old daughter. The prior finding, however, was flawed, and the judge at the 18-month review hearing did not examine "whether any molestation ever really occurred." (*Id.* at pp. 1741-1742.) Instead, at the 18-month review hearing the child protective agency presented evidence of the parents' failure to admit the sexual abuse, and the juvenile court found it would be detrimental to return the child and her siblings to the parents and terminated reunification services. (*Id.* at p. 1747.)

The court in *Blanca P.* held "collateral estoppel effect should not be given, at a 12[-] or 18-month review, to a prior finding of child molestation made at a jurisdictional hearing when the accused parents continue to deny that any molestation ever occurred and there is new evidence supporting their denial."[8] (*Blanca P.*, *supra*, 45 Cal.App.4th at p. 1757.) This appeal does not involve collateral estoppel or have the procedural anomalies or subsequent exonerating evidence there was in *Blanca P.* Moreover, the court in *Blanca P.* did not hold a parent may not be

---

[8]    After sustaining the allegations in the petition, the juvenile court in *Blanca P.* ordered the father to undergo a psychological examination. The psychologist reported his "'clinical observations and findings [did] not support the diagnosis of pedophilia [or] incest.'" (*Blanca P.*, *supra*, 45 Cal.App.4th at p. 1745.)

13

punished for his or her beliefs, as Armando argues the juvenile court here did to him; rather, the court in *Blanca P.* stated that, because a parent's denial of sexual abuse can be used to deny reunification services, "the confession dilemma places an *extraordinary premium* on the correct adjudication of a petition alleging sexual abuse." (*Id.* at pp. 1753-1754.) There are no such procedural circumstances here, and the juvenile court did not err in finding Armando sexually abused Valentina.

Armando also misconstrues the court's visitation order. The court's order did not punish Armando for his beliefs, but for his failure to acknowledge his wrongdoing, which increased the risk of recurrence. (Cf. *In re V.L.* (2020) 54 Cal.App.5th 147, 156 ["A parent's denial of domestic violence increases the risk of it recurring."].) As discussed, the focus of orders under section 362.4 is the best interests of the children (see *In re T.S.*, *supra*, 52 Cal.App.5th at p. 513), which the juvenile court properly exercised its discretion to protect by placing restrictions on Armando's visitation.

> C.    *The Juvenile Court Did Not Abuse Its Discretion in Prohibiting Blanca from Monitoring Armando's Visits*

As a preliminary matter, we have serious doubts about Blanca's standing to challenge the juvenile court's order prohibiting her from monitoring Armando's visits. "'Standing to challenge an adverse ruling is not established merely because a parent takes a position on an issue that affects the minor [citation]; nor can a parent raise the minor's best interest as a basis for standing [citation]. Without a showing that a parent's personal rights are affected by a ruling, the parent does not establish standing. [Citation.] To be aggrieved or affected, a parent must have a legally cognizable interest that is affected injuriously by the juvenile court's decision."' (*In re C.C.* (2009)

14

172 Cal.App.4th 1481, 1489, fn. 4; see *In re D.S.* (2007) 156 Cal.App.4th 671, 673-674 ["the ability to appeal does not confer standing to assert issues when [a party] is not aggrieved by the order from which the appeal is taken"].) Blanca has not shown she has a legally cognizable interest in serving as the monitor for Armando's visits.

In any event, the juvenile court did not abuse its discretion. Although Blanca had largely supported Valentina's steadfast account Armando sexually abused her, Blanca later withdrew that support. At the CFT meeting just five months before the juvenile court issued the custody and visitation orders, Blanca questioned whether the abuse even occurred. The juvenile court reasonably concluded that, because Blanca no longer believed Armando committed sexual abuse (and that, by extension, he could potentially endanger the children), and because she instructed Eddy to keep quiet about his belt marks, she could not be trusted to monitor Armando's visits. The juvenile court's order prohibiting Blanca from monitoring Armando's visits was again a proper exercise of discretion to further the best interests of the children and their safety. (See *In re Natalie A., supra,* 243 Cal.App.4th at pp. 186-187.)

## DISPOSITION

The juvenile court's custody and visitation orders are affirmed.

SEGAL, J.

We concur:

PERLUSS, P. J.

FEUER, J.